**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **Jonathan Carcasses,**<br>Plaintiff,<br>v.<br>**Better Rise Capital LLC,**<br>Defendant. | **Case No.:** 1:26-cv-27832<br><br>**COMPLAINT FOR VIOLATIONS OF THE:**<br>**1) TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.; AND**<br>**2) THE FLORIDA TELEPHONE SOLICITATION ACT, FLA. STAT. § 501.059**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Jonathan Carcasses ("Plaintiff") brings this action against Defendant Better Rise Capital, LLC ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 *et seq*.

2. Defendant is a limited liability company which provides commercial loans. To promote its services, Defendant engages in unsolicited marketing, thereby harming consumers, such as Plaintiff, in the process.

3. Through this action, Plaintiff seeks injunctive relief to halt

Defendant's illegal conduct, which has resulted in the invasion of his privacy, and the harassment, aggravation, and disruption of his daily life. Plaintiff also seeks statutory damages and any other available legal or equitable remedies.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Southern District of Florida.

7. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

8. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges

violations of a federal statute, the TCPA. Jurisdiction is proper under 28 U.S.C. § 1367 with regard to Plaintiff's state law claims which arise from the same case or controversy as the federal claim.

10. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this judicial district.

## PARTIES

11. Plaintiff is a natural person residing in the City of Miami, County of Miami-Dade, State of Florida.

12. Defendant is a limited liability company that routinely provides commercial loans with a principal place of business located in Irvine, California.

## THE TCPA

13. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or

artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

14. In an action under the TPCA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1318, 1319 (S.D. Fla. 2012), aff'd 755 F.3d 1265 (11th Cir. 2014).

15. Additionally, the Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. Pursuant to its authority, the FCC implemented 47 C.F.R. § 64.1200(c), which states that "[n]o person or entity shall initiate any telephone solicitation to…"[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." This regulation is promulgated by Congress through 47 U.S.C. § 227(c)(5).

16. The FCC also implemented an internal Do Not Call provision through 47 C.F.R. § 64.1200(d), which requires persons and entities to institute "procedures for maintaining a list of persons who request not to

receive such calls made by or on behalf of that person or entity."

17. Furthermore, in 2012, the FCC issued an order tightening the restrictions for telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012).

18. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (Feb. 15, 2012).

19. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate

purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. at 14098 ¶ 141).

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*.

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23. If a call is not deemed telemarketing, a defendant must

nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

24. The United States Court of Appeals for the Eleventh Circuit has found that a single, unwanted telephone call or text is enough to satisfy Article III standing, pursuant to the TCPA.[1]

**FLA. STAT. § 501.059**

25. The FTSA states that the National Do-Not-Call registry shall be included within the Florida specific database. *See* Fla. Stat. § 501.059(3)(d); *see also* 47 U.S.C. § 227(f)(2) ("a State or local authority may not, in its regulation of telephone solicitations, require the use of any database, list, or listing system that does not include the part of such single national database that relates to such State").

26. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any [phone number] if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4).

---

[1] *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023)

27. The statute defines “telephonic sales call” as a “telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.” Fla. Stat. § 501.059(1)(i).

28. A person will be defined as a “called party” if they are a “person who is the regular user of the telephone number that receives a telephonic sales call,” under Fla. Stat. § 501.059(1)(a).

29. An “unsolicited telephonic sales call” is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. § 501.059(4)(k).

30. Similarly to the TCPA, the FTSA implements an internal Do Not Call provision. Under the FTSA, a telephone solicitor may not initiate an outbound telephone call or voicemail transmission to a consumer who has previously communicated to the telephone solicitor that he or she does not wish to receive an outbound call made by, or on behalf of the seller. Fla. Stat. § 501.059(5).

31. Furthermore, the FTSA also prohibits persons from “making or

knowingly allowing to be made an unsolicited telephonic sales call if such call involves the use of an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed without the express written consent of the called party." Fla. Stat. § 501.059(8)(a).

## GENERAL ALLEGATIONS

32. At all times relevant, Plaintiff was an individual residing within the State of Florida.

33. At all times relevant, Defendant conducted business in the State of Florida.

34. Plaintiff registered his phone number with the National Do Not Call Registry in or around 2004.

35. In doing so, Plaintiff also registered his number under the Florida specific Do Not Call Registry through the Department of Agriculture & Consumer Services pursuant to Fl. Stat. § 501.059(3)(d) and 47 U.S.C. § 227(f)(2).

36. Plaintiff uses his phone primarily for residential purposes, such as speaking to friends and family.

37. Defendant is required to check the National Do Not Call Registry

before attempting to call. 47 U.S.C. § 227(c)(3)(F).

38. On February 26, 2026, Plaintiff received a call from (856) 754-8573. Plaintiff did not answer, but Defendant left a message which stated, "This is Justin Romano with the business credit department regarding your business line of credit. Whenever you have a moment, please give me a call back… This is time sensitive."

39. Later that same day, Plaintiff received another call from Defendant but this time from the number (831) 999-4104. This time Defendant left a message informing Plaintiff that he had been preapproved for a line of commercial credit in the amount of $156,000.00.

40. By transmitting more than one call to Plaintiff's phone number, which was, and still is, registered on the National Do Not Call registry, Defendant violated the TCPA, including the National Do Not Call provisions in 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c).

41. Because Plaintiff's number was also registered on the Florida Do Not Call registry, Defendant's calls violated the FTSA, including the Do Not Call provision in Fla. Stat. § 501.059(4).

42. On February 27, 2026, Plaintiff received a call from (205) 622-4609. The message was again left by "Justin Romano" and was identical to

the first message on February 26, 2026.

43. Over the next several months, Defendant bombarded Plaintiff with prerecorded calls and voice messages.

44. In the month of March 2026, Plaintiff received thirteen (13) phone calls and voice messages from Defendant. None of the messages referred to Plaintiff by name. The messages advertised lines of commercial credit to Plaintiff.

45. After becoming frustrated by Defendant's incessant calls, Plaintiff answered at least one of the calls in or around March 2026 and demanded that Defendant cease contacting him.

46. Through this demand, Plaintiff expressly revoked any alleged consent Defendant may have been acting upon when contacting him.

47. To discover who was placing these calls and messages, Plaintiff called the numbers back several times and was transferred to individuals who identified themselves with Defendant. Once transferred, Plaintiff complained about the incessant calls and again demanded that Defendant cease its calls.

48. Additionally, Plaintiff answered several calls, followed the prerecorded prompt, and got transferred to individuals who stated they were calling on behalf of Better Rise Capital.

49. However, despite Plaintiff's reasonable efforts to prevent future calls, Defendant continued to bombard Plaintiff's phone with dozens of calls and voice messages.

50. In the month of April 2026, Plaintiff received twenty-six (26) phone calls and voice messages from Defendant. Like the preceding voice messages, these messages did not mention Plaintiff by name and went on to advertise lines of commercial credit.

51. In the month of May 2026, Plaintiff received another eighteen (18) phone calls and voice messages from Defendant. Like the messages before, these messages also advertised lines of commercial credit without mentioning Plaintiff by name.

52. Additionally, Plaintiff received two (2) calls and voice messages from Defendant in June 2026. Those calls occurred on June 1 and June 2.

53. Therefore, at a minimum, Plaintiff received sixty-two (62) calls and voice messages from Defendant.

54. These calls were made by at least 14 different individuals claiming to be representatives of Defendant. Furthermore, nearly every one of Defendant's calls were made from a unique phone number.

55. Due to the impersonal, generic, and similar nature of the voice

messages, these messages were likely prerecorded and used by Defendant to advertise its services to many individuals simultaneously.

56. Indeed, Defendant operates with a "D" rating on the Better Business Bureau and has numerous complaints and reviews attesting to their unscrupulous calling practices:

**Initial Complaint** — **Type:** Product Issues

**Date:** 04/01/2026 — **Status:** Unanswered

I have received daily robocalls from this business for the past month. Even though I called the number provided [redacted]) and insisted that they stop calling me, the calls continue every day. After several calls, I was finally able to get them to tell me the name of the company (they refused to identify the business in the first several calls). Upon playing into their game, I find that they are doing business under 2 different names, which are Rize Funding, [redacted], [redacted], and Better Rise Capital, [redacted], [redacted]. All I want is for them to stop contacting me. These are clearly unscrupulous people.

**Initial Complaint** — **Type:** Order Issues

**Date:** 05/11/2026 — **Status:** Answered

This company calls me every single day for the last 3 months or longer.. I have never done business with them and dont wish to do business with them, but when I call and ask them not to call me anymore they simply hang up and the calls continue!! Every day! Can you imagine someone calling you every single day without missing a day for months? Its ridicules and harassment !! No company in the [redacted] should be allowed to harass people like this company please help

## Initial Complaint

**Type:** Customer Service Issues

**Date:** 06/01/2026

**Status:** Answered

This company calls me numerous times a day, every single day for the last 6 months. I have never done business with them and do not wish to do business with them. I am on the [redacted] NO CALL LIST. I have blocked the numbers numerous times, but they just use random spoofing numbers. I have called and ask them not to call me anymore they simply hang up and the calls continue. Its ridiculous and bordering on harassment!

### Tom W

**Date:** 06/02/2026

To the best of my knowledge, and based on my direct experience, I believe this company may be operating in a highly questionable manner.I have received more than 50 unsolicited calls from individuals claiming to represent a company called [redacted] These calls have originated from numerous different phone numbers. During these conversations, the callers typically refuse to answer basic questions about their company and instead attempt to transfer me to a "loan associate."I have requested to be removed from their calling list no fewer than 30 times. In many instances, the caller either immediately hangs up or becomes rude and insulting when I ask to be removed from future contact.What raises additional concerns is that when researching Better Rise Capital LLC through online sources, AI-assisted searches, and LinkedIn, I found that they list [redacted] as their business phone number. However, when I called that number, it was answered by Quick Capital [redacted]. Both companies appear to be associated with the same address.While Quick Capital Funding may be a legitimate business, the persistent and aggressive calling practices, refusal to honor do-not-call requests, and lack of transparency have caused me to question the credibility and business practices of anyone associated with [redacted] and/or Better Rise Capital LLC.I would strongly encourage anyone considering doing business with these organizations to conduct thorough due diligence before providing personal or financial information.

### Robert M

**Date:** 05/28/2026

Receiving 2-3x daily spam calls leaving voicemails about "approved business funding". They don't bother to respect the [redacted] list nor do they remove you when asked. And they always use a bunch of indians in an offshore call center to "pre-screen" you for approval. This means there IS no approval, they're just spam calling any number they can get ahold of.Don't do business with people like this. File complaints with the [redacted] and the [redacted].

**Mark H**

**Date:** 04/02/2026

Do you receive AI spam calls to your phone offering a business line of credit? This is the company responsible! In the past 6 months I have probably received over [illegible] + of these calls and I have finally figured out this is the company responsible. If I had to guess, this one company is responsible for millions of spam phone calls. You should be ashamed of yourselves to be doing marketing this way.

**David R**

**Date:** 03/30/2026

These people have been calling me twice a day for almost three months now. When you ask to get taken off the list, which they legally have to do, they just hang up. Reporting them to the [illegible] and the [illegible].

**Tom F**

**Date:** 03/03/2026

Spam calls every single day! Or theyre hiring companies to do it.

57. By leaving prerecorded messages on Plaintiff's phone to advertise its commercial loans, Defendant violated 47 U.S.C. § 227(b)(1)(A).

58. Additionally, by leaving these prerecorded messages on Plaintiff's phone, Defendant violated Fla. Stat. § 501.059(8)(a) by playing a recorded message when connected to a number called without the prior express written consent of the called party.

59. Defendant's phone calls constitute telephone solicitation because

it encouraged the future purchase or investment in property, goods, or services under 47 U.S.C. § 227(a)(4), i.e., attempting to convince Plaintiff to obtain a commercial loan.

60. Furthermore, based on Plaintiff's own personal experiences, Defendant does not adhere to a valid internal Do Not Call policy and does not take adequate steps to ensure that any entities making calls or leaving messages on its behalf adhere to an internal Do Not Call policy.

61. By failing to adhere to a valid internal Do Not Call policy, Defendant has violated 47 U.S.C. 227(c)(5), including the internal do not call provision in 47 C.F.R. § 64.1200(d).

62. Additionally, through Defendant's failure to adhere to a valid internal Do Not Call list, Defendant has violated the FTSA, including the internal Do Not Call provision in Fla. Stat. § 501.059(5).

63. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

64. Defendant's unsolicited phone calls caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

65. Defendant's phone calls also inconvenienced Plaintiff and

caused disruption to his daily life.

66. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that he spent numerous hours dealing and investigating these unwanted phone calls including who had been calling him, how Defendant obtained his number, and efforts to stop the calls.

67. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendants' poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

68. Defendant's abovementioned conduct constitutes multiple violations of the TCPA and FTSA.

## COUNT I

## NEGLIGENT AND WILLFUL VIOLATIONS OF THE TCPA, 47 U.S.C. § 227

69. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

70. The forgoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. § 64.1200.

71. These violations include incessant calls using an artificial and/or

prerecorded voice to Plaintiff's cellular phone, without any prior express consent in violation of 47 U.S.C. § 227(b).

72. Additionally, Defendant made two or more telemarketing calls in any given year to Plaintiff's phone number which is registered with the National Do Not Call registry in violation of 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c).

73. Finally, Defendant failed to maintain procedures necessary to adhere to an internal Do Not Call list in violation of 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(d).

74. Defendant knew or should have known that Plaintiff's number was registered on the National Do Not Call registry because it had been registered since 2004. Defendant also had actual knowledge of Plaintiff's desire not to receive future calls. The violations were therefore willful or knowing.

75. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct violating the TCPA in the future.

76. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to and seeks an award of $1,500.00 in statutory

damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3) and 47 U.S.C. § 227(c)(5).

77. Alternatively, Defendant's violations of the TCPA were negligent and Plaintiff is entitled to and seeks an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(c)(5)(C).

## COUNT II

## NEGLIGENT AND WILLFUL VIOLATIONS OF FLA. STAT. § 501.059

78. Plaintiff re-alleges and incorporates paragraphs 1-68 as if fully set forth herein.

79. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FTSA, including but not limited to each and every above-cited provision of Fla. Stat. § 501.059.

80. Defendant failed to identify itself upon making contact by telephone with Plaintiff in violation of Fla. Stat. § 501.059(2).

81. Defendant failed to adhere to Plaintiff's desire to be placed on their internal Do Not Call list in violation of Fla. Stat. §§ 501.059(3), (5).

82. Defendant made unsolicited telephonic sales calls to Plaintiff despite his number appearing in Florida's Do Not Call list, in violation of Fla. Stat. § 501.059(4).

83. Defendant knowingly made an unsolicited telephonic sales call which played a recorded message without Plaintiff's prior express written consent in violation of Fla. Stat. § 501.059(8)(a).

84. Defendant knew or should have known that Plaintiff's number was on the Florida do not call database as it has been registered since 2004. Defendant had actual knowledge of Plaintiff's stated desire not to receive future calls. The violations were therefore willful or knowing.

85. As a result of Defendant's knowing and/or willful violations of the FTSA, Plaintiff is entitled to and seeks an award of $1,500.00 in statutory damages for each and every willful violation, pursuant to Fla. Stat. § 501.059(10)(a)-(b).

86. Alternatively, Defendant's violations of the FTSA were negligent and Plaintiff is entitled to, and seeks, an award of $500.00 in statutory damages, for each and every violation, pursuant to Fla. Stat. § 501.059(10)(a).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida Statute § 501.059;

b. An injunction prohibiting Defendant from calling Plaintiff without his prior express consent;

c. An award of actual and statutory damages;

d. Treble damages for willful violations; and

e. Such further and other relief the Court deems reasonable and just.

**TRIAL BY JURY**

87. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: November 3, 2026

Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE______
RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**

2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com